IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STEPHEN BASSEY OFFIIONG, a/k/a | § | |
| STEPHEN BASSEY, A071-822-376, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION H-11-0418 |
| | § | |
| ERIC H. HOLDER, JR., Attorney | § | |
| General of the United States; | § | |
| JANET NAPOLITANO, Secretary of | § | |
| the Department of Homeland | § | |
| Security; ALEJANDRO MAYORKAS, | § | |
| Director, United States | § | |
| Citizenship and Immigration | § | |
| Services; and KENNETH LANDGREBE, | § | |
| United States Immigration and | § | |
| Customs Enforcement Field | § | |
| Office Director, | § | |
| | § | |
| Defendants. | § | |

**OPINION AND ORDER OF DISMISSAL**

Pending before the Court in the above referenced cause, seeking declaratory and injunctive relief and a writ of mandamus and alleging that Defendants in their official capacities improperly denied the Form I-130 Visa Petition for Alien Relative ("I-130") filed on behalf of Plaintiff Stephen Bassey Offiiong[1] ("Plaintiff" or "Bassey") and improperly determined that he had never been granted lawful permanent resident status because he had participated in a marriage fraud scheme, is a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6)

---

[1] At times in the motion and in the documentary evidence "Offiiong" is spelled "Offiong." The Court has made the spelling consistent throughout this opinion and order.

(instrument #16), filed by Defendants Eric H. Holder, Jr., Attorney General of the United States, Janet Napolitano, Secretary of the Department of Homeland Security ("DHS"), Alejandro Mayorkas, Director of the United States Citizenship and Immigration Services ("USCIS"), and Kenneth Landgrebe, United States Immigration and Customs Enforcement ("ICE") Field Officer Director.  Plaintiff, a native and citizen of Nigeria, did not file a response.

Plaintiff asserts that his Complaint for Declaratory and Injunctive Relief and Petition for Writ of Mandamus (#1) in this action is based on new evidence, i.e., an April 13, 1993 letter from the former Immigration and Naturalization Service ("INS"),[2] which refers to an individual named "Ben," not to Plaintiff, as participating in the marriage fraud scheme.  Additionally he seeks an order barring his removal, prohibiting the use of overseas investigations in adjudicating immigration benefits, and requiring the production of certain documents.

Defendants move for dismissal of the complaint on several grounds:  (1) Plaintiff's claims are barred by collateral estoppel and res judicata because all the issues have been litigated and decided by the United States District Court for the Northern

---

[2] As explained by Defendants, the INS ceased to exist as an independent agency within the Department of Justice as of March 1, 2002, and its functions were transferred to the DHS and divided into separate bureaus, with ICE handling immigration enforcement functions and USCIS handling immigrant service functions.  Homeland Security Act, Pub. Law No. 107-296, §§ 441, 451.  *Campbell v. Ganter*, 353 F. Supp. 2d 332, 335-36 (E.D.N.Y. 2004), *citing Robledo-Gonzalez v. Ashcroft*, 342 F.3d 667, 667 n.1 (7th Cir. 2003).

District of California in 2002 and by the United States Court of Appeals for the Ninth Circuit in ruling on a Petition for Review after Plaintiff was ordered removed in removal proceedings; (2) the April 13, 1993 letter is not "new evidence" because Plaintiff has had it since 2002 litigation in the Northern District of California and because it was provided to him again in 2006 during his Petition for Review (the copy attached to his Complaint here is from the Record on Appeal to the Ninth Circuit); (3) Plaintiff's Complaint is barred by 28 U.S.C. § 2401(a)[3] because over six years have passed since the right of action accrued and Plaintiff (a) was informed that he had no lawful permanent resident status; (b) was informed that his I-130 was denied; and (c) obtained the "newly discovered evidence"; (4) Plaintiff's challenges to the determination regarding his lawful permanent resident status and his removal are also barred by 8 U.S.C. § 1252, as amended by the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231 (2005)("REAL ID Act"); and (5) Plaintiff fails to state a claim upon which relief can be granted because (a) the denial of his visa petition was proper due to his engagement in marriage fraud; (b) there is no basis for his contention that he ever had lawful permanent resident status; and (3) the "newly-discovered evidence" has no effect on these findings because the document at issue does refer to

---

[3] In relevant part, section 2401(a) provides, "Except as provided by chapter 71 of title 41, every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues."

Plaintiff and not to an individual named "Ben."

**Relevant Law**

**Standard of Review**

"When a motion to dismiss for lack of jurisdiction 'is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Crenshaw-Logal v. City of Abilene, Texas*, 2011 WL 3363872, *1 (5th Cir. 2011), *quoting Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *see also Randall D. Wolcott, MD, PA v. Sebelius*, 635 F.3d 757, 762 (5th Cir. Mar. 15, 2011); Fed. R. Civ. P. 12(h)(3). If a complaint could be dismissed for both lack of jurisdiction and for failure to state a claim, "the court should dismiss only on the jurisdictional ground under [Rule] 12(b)(1), without reaching the question of failure to state a claim under [Rule] 12(b)(6)." *Crenshaw-Logal*, 2011 WL 3363872, *1, quoting Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977). The reasons behind this practice are to preclude courts from issuing advisory opinions and barring courts without jurisdiction "'from prematurely dismissing a case with prejudice.'". *Id.*, *citing Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998), and *Ramming*, 281 F.3d at 161.

Rule 12(b)(1) allows a party to move for dismissal of an action for lack of subject matter jurisdiction. The party asserting that subject matter exists, here the plaintiff, must bear

-4-

the burden of proof for a 12(b)(1) motion. *Ramming*, 281 F.3d at 161. In reviewing a motion under 12(b)(1) the court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is characterized as either a "facial" attack, i.e., the allegations in the complaint are insufficient to invoke federal jurisdiction, or as a "factual" attack, i.e., the facts in the complaint supporting subject matter jurisdiction are questioned. *In re Blue Water Endeavors, LLC,* Bankr. No. 08-10466, Adv. No. 10-1015, 2011 WL 52525, *3 (E.D. Tex. Jan. 6, 2011), *citing Rodriguez v. Texas Comm'n of Arts*, 992 F. Supp. 876, 878-79 (N.D. Tex. 1998), *aff'd*, 199 F.3d 279 (5th Cir. 2000). A facial attack happens when a defendant files a Rule 12(b)(1) motion without accompanying evidence. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). In a facial attack, allegations in the complaint are taken as true. *Blue Water*, 2011 WL 52525 at *3, *citing Saraw Partnership v. United States*, 67 F.3d 567, 569 (5th Cir. 1995).

If it is a factual attack, as is the case here, the Court may consider any evidence (affidavits, testimony, documents, etc.)

submitted by the parties that is relevant to the issue of jurisdiction. *Id., citing Irwin v. Veterans Admin.*, 874 F.2d 1092, 1096 (5th Cir. 1989). A defendant making a factual attack on a complaint may provide supporting affidavits, testimony or other admissible evidence. *Patterson v. Weinberger*, 644 F.3d 521, 523 (5th Cir. 1981). The plaintiff, to satisfy its burden of proof, may also submit evidence to show by a preponderance of the evidence that subject matter jurisdiction exists. *Id*. The court's consideration of such matters outside the pleadings does not convert the motion to one for summary judgment under Rule 56(c). *Robinson*, 2008 WL 4692392 at *10, *citing Garcia*, 104 F.3d at 1261. "Unlike in a facial attack where jurisdiction is determined upon the basis of allegations of the complaint, accepted as true[,] when a factual attack is made upon federal jurisdiction, no presumption of truthfulness attaches to the plaintiffs' jurisdictional allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In a factual attack, the plaintiffs have the burden of proving that federal jurisdiction does in fact exist." *Evans v. Tubbe*, 657 F.2d 661, 663 (5th Cir. 1981). In resolving a factual attack on subject matter jurisdiction under Rule 12(b)(1), the district court, which does not address the merits of the suit,[4] has significant authority

---

[4] As the court explained in *Taylor v. Dam*, 244 F. Supp. 2d 747, 753 (S.D. Tex. 2003),

It is well settled that "a district court has broader power to decide its own right to

"'to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Robinson v. Paulson*, No. H-06-4083, 2008 WL 4692392, *10 (S.D. Tex. Oct. 22, 2008), *quoting Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997), and *citing Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986).

**Res Judicata and Collateral Estoppel**

"'Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 401 (5th Cir. 2009), *quoting Allen v. McCurry*, 449 U.S. 90, 94 (1980). The doctrine "'insures the finality of judgments and thereby conserves judicial resources and protects litigants from multiple lawsuits.'" *Id.*, *quoting United States v. Shanbaum*, 10 F.3d 305, 310 (5th Cir. 1994). To demonstrate that *res judicata* bars a later suit, a party must satisfy four conditions: (1) the parties are identical [or in

---

hear the case than it has when the merits of the case are reached." [*Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.). *cert. denied*, 454 U.S. 897 (1981).] "Jurisdictional issues are for the court--not the jury--to decide, whether they hinge on legal or factual determinations. *Id.* To determine whether jurisdiction exists, the court will generally resolve any factual disputes from the pleadings and the affidavits submitted by the parties. *See Espinoza v. Missouri Pac. R.R. Co.*, 754 F.2d 1247, 1248 n.1 (5th Cir. 1985). The court may also conduct an evidentiary hearing and "may hear conflicting written and oral evidence and decide for itself the factual issues which determine jurisdiction." *Williamson*, 645 F.2d at 413; *see Menchaca v. Chrysler Credit Corp.*,613 F.2d 507, 511-12 (5th Cir.), *cert. denied*, 449 U.S. 953 . . . (1980).

privity] in the two actions; (2) the prior judgment was rendered by a court of competent jurisdiction; (3) there is a final judgment on the merits; and (4) the same claim or cause of action must be involved in both suits. *Id., citing In re Ark-La-Tex Timber Co.*, 482 F.3d 319, 330 (5th Cir. 2007); *see also Matter of Swate*, 99 F.3d 1282, 1286 (5th Cir. 1996). Usually the Court determines if two suits involve the same claim or cause of action by applying the transactional test of the *Restatement (Second) of Judgments* § 24. *Petro-Hunt, LLC v. United States*, 365 F.3d 385, 395 (5th Cir. 2004). That test focuses upon whether the two cases under review are based on "the same nucleus of operative facts." *In re Southmark Corp.*, 163 F.3d 925, 934 (5th Cir. 1999). Thus it is the nucleus of operative facts, not the type of relief sought or substantive theories advanced or type of rights asserted, that defines the claim for purposes of res judicata. *United States v. Davenport*, 484 F.3d 321, 326 (5th Cir. 2007). If two actions share the same nucleus of operative facts, "the prior judgment's preclusive effect 'extends to all rights the original plaintiff had 'with respect to all or any part of the transaction, or series of connected transactions, out of which the [original] action arose.''" *Id., citing Petro-Hunt*, 365 F.3d at 395, *citing Restatement (Second) of Judgments* § 24(1).

While the broader "doctrine of res judicata forecloses all that which might have been litigated previously, collateral

estoppel treats as final only those questions actually and necessarily decided in a prior suit." *In re Shuler*, 722 F.2d 1253, 1255 (5th Cir. 1984)(*quoting Brown v. Felsen*, 442 U.S. 127, 139 n.10 (1979)), *cert. denied sub nom. Harold v. Simpson & Co.*, 469 U.S. 817 (1984). The Fifth Circuit has dubbed res judicata as "claim preclusion" and collateral estoppel as "issue preclusion." *White v. World Finance of Meridian, Inc.*, 653 F.2d 147, 150, 151 (5th Cir. 1981). Nevertheless the Fifth Circuit recognizes the modern trend to refer to both doctrines as "res judicata." *In re Vollbracht*, 276 Fed. Appx. 360, 363 (5th Cir. 2007).

The Fifth Circuit usually uses the term "'collateral estoppel'" when "'(i) the issue to be precluded [is] identical to that involved in the prior action, (ii) in the prior action the issue [was] actually litigated, and (iii) the determination made of the issue in the prior action [was] necessary to the resulting judgment.'" *Id. quoting Shuler*, 722 F.2d at 1256 n.2. Although in collateral estoppel complete identity of all parties is not required, the party against whom it would be asserted must either have been a party, or privy to a party, in the previous case. *Vines v. University of La. at Monroe*, 398 F.3d 700 (5th Cir. 2005), *citing Terrell v. DeConna*, 877 F.2d 1267, 1270 (5th Cir. 1989).

**Statutory and Regulatory Basis for Plaintiff's Claims**

The Immigration and Nationality Act ("INA") § 204(a) permits a United States citizen (the "petitioner") to file a petition for

an immigrant visa on behalf of his or her alien spouse (the "beneficiary") by filing a Petition for Alien Relative on a USCIS Form I-130.  8 U.S.C. § 1154(a)(1).  Under § 1154(b),

> [a]fter an investigation of the facts in each case and after consultation with the Secretary of Labor with respect to petitions to accord status under section 1153(b)(2) or 1153(b)(3) of this title, the Attorney General shall, if he determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made is an immediate relative specified in section 1151(b) of this title, approve the petition and forward one copy thereof to the Department of State.  The Secretary of State shall then authorize the consular officer concerned to grant the preference status.

The petitioner (the United States citizen or permanent resident) bears the burden of proving eligibility, in this case establishing the validity of Plaintiff's marriage to a United States citizen. 8 U.S.C. § 1361.

Nevertheless, an exception to eligibility, relevant to this case, is provided under section 204(c),

> [N]o petition shall be approved if (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.

*See Vasquez v. Holder*, 602 F.3d 1003, 1014 n.11 (9ᵗʰ Cir. 2010). The regulation 8 C.F.R. § 204.2(a)(1)(ii) addresses this fraudulent marriage prohibition in § 204(c):

> The director will deny a petition for immigrant visa
> classification filed on behalf of any alien for whom
> there is substantial and probative evidence of such an
> attempt or conspiracy, regardless of whether that alien
> received a benefit through the attempt or conspiracy.
> Although it is not necessary that the alien have been
> convicted of, or even prosecuted for, the attempt or
> conspiracy, the evidence of the attempt or conspiracy
> must be contained in the alien's file.

Thus where there is substantial and probative evidence in the alien's file of such an attempt or conspiracy, the petition must be denied "regardless of whether the alien received a benefit through the attempt or conspiracy." C.F.R. § 204.2(a). Once an alien is determined to have engaged in marriage fraud, § 1154(c) precludes the possibility of any subsequent visa petition by that alien ever being approved. *Ghaly v. INS*, 48 F.3d 1426, 1436 (7th Cir. 1995)(observing that § 1154(c) is a "harsh law" because an alien "can never become a citizen of the United States or even reside permanently in this country" after a finding is made that he enter or attempted to enter into a sham marriage). Thus where the exception to eligibility under § 204(c) is relevant, the right to obtain an I-130 visa is extinguished. The applicant may subsequently appeal that decision to the Board of Immigration Appeals ("BIA"). 8 C.F.R. § 1204.1.

While § 204(a) grants the right to submit an I-130 visa petition, it does not provide a right to an adjudicatory hearing. 8 U.S.C. § 1154(a)(1)(A)(i), (B)(i)(i); 8 C.F.R. § 204.1(a). When the USCIS uncovers information relating to marriage fraud, the

agency must issue a notice of intent to deny (a "NOID") to the applicant informing him of "the derogatory information" and giving him the "opportunity to rebut the information and present information in his/her own behalf before the decision is rendered." 8 C.F.R. §§ 103.2(b)(8)(iv) and 103.2(b)(16)(i).   The District Director of USCIS, after receiving the applicant's response, decides whether the I-130 petition should be approved.   6 U.S.C. § 271(b); 8 C.F.R. §§ 204.1(d) and 204.2(a)(1)(ii).

Under 8 U.S.C. 1252(a)(2)(B), regarding denials of discretionary relief, "no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of homeland Security, other than granting relief under section 1158(a) of this title."   Section 8 U.S.C. § 1154.   The Ninth Circuit has held that § 1252(a)(2)(B)(ii), which states that no court shall have jurisdiction to review a "decision or action of the Attorney General or the Secretary of Homeland security the authority for which is specified . . . to be in the discretion of the Attorney General or the Secretary of Homeland Security, other that the granting of relief under section 1158(s) of this title." *Spencer Enterprises, Inc. v. U.S.*, 345 F.3d 683, 689 (9th Cir. 2003).   The Ninth Circuit has concluded that the determination that a marriage is a sham involves reviewable legal

and factual questions and "the Attorney General cannot legally make a judgment solely according to the dictate of his or her conscience." *Nakamoto v. Ashcroft*, 363 F.3d 874, 880-81 (9th Cir. 2004)("We do . . . retain jurisdiction to review the Attorney General's decisions, where his or her exercise of discretion is guided by the application of legal standards to the facts in question."), *citing Spencer Enterprises,* 345 F.3d at 689.   The Fifth Circuit has also held that I-130 petition determinations about the validity of a marriage are not discretionary within the meaning of § 1252(a)(2)(B), and thus they are reviewable by the courts.  *Ayanbadejo v. Chertoff*, 517 F.3d 273, 278 (5th Cir. 2008), *citing Zhao v. Gonzales*, 404 F.3d 295, 303 (5th Cir. 2005).  *See also Ordonez Orozco v. Chertoff*, Civ. A. No. B-07-153, 2008 WL 5155728, *2 (S.D. Tex. Dec. 8, 2008); and *Hakamuddin v. Chertoff*, Civ. No. 4:08-cv-1261, 2008 WL 8444770, *2 (S.D. Tex. Aug. 18, 2008).  *In accord, Ginters v. Frasier*, 614 F.3d 822, 829 (8th Cir, 2010); *Ogbolumani v. Napolitano*, 557 F.3d 729, 733 (7th Cir. 2009).

To apply and be eligible for adjustment of status to that of lawful permanent resident ("LPR") on the basis of a family relationship to a citizen or a lawful permanent resident (USCIS Form I-485), an applicant must have an approved immigrant visa petition, i.e., the Petition for Alien Relative, Form I-130.   8 U.S.C. §§ 204.1(a)(1), 245(a)(2), 299.1.  When the USCIS reaches its decision on a particular applicant for a visa, the director

-13-

must notify the applicant by written decision.  *Peng v. Gonzales*,
No. C-06-07872 JCS, 2007 WL 2141270, *2 (N.D. Cal. July 25, 2007),
citing 8 U.S.C. § 1255(a), 8 C.F.R. §§ 245.2(5)(i), 103.2(b)(19).[5]

Section 245 of the INA, 8 U.S.C. § 245, governs requests for
adjustment of status filed by an alien in deportation proceedings.
8 C.F.R. § 240.1(a)(1)(ii), 240.11(a)(1).   Section 1255(a)
provides,

> The status of an alien who was inspected and admitted or
> paroled into the United States . . . may be adjusted by
> the Attorney General,[6] in his discretion and under such
> regulations as he may prescribe, to that of an alien
> lawfully admitted for permanent residence if (1) the
> alien makes an application for such adjustment, (2) the
> alien is eligible to receive an immigrant visa and is
> admissible to the United States for permanent residence,
> and (3) an immigrant visa is immediately available to him
> at the time his application is filed.

An alien applies for adjustment of status to that of a lawful
permanent resident on USCIS Form I-485.  8 C.F.R. § 291.  As noted,
to be eligible for adjustment of status on the grounds of a family
relationship to a permanent resident or citizen of the United

---

[5] Even then, the approval of the petition does not automatically result in the issuance of a
visa or grant permanent lawful resident status to the beneficiary; rather the beneficiary receives a
place in line to wait for a visa, and there are annual limitations on the total number of visas that
may be granted for a particular family preference category and on the number of natives of a
single country who may receive visas.  *Bolvito v. Mukasey*, 527 F.3d 428, 430-31 (5th Cir. 2008).
An approved I-130 filed by the spouse fulfills the requirement that a visa be "immediately
available."  *INS v. Miranda*, 459 U.S. 14, 15 (1982).

[6] As noted, the Homeland Security Act of 2002, 6 U.S.C. §§ 101 *et seq.*, transferred the
authority to adjust status from the Attorney General and the INS to the Secretary of Homeland
Security and divisions of that Department and the Director of USCIS. 8 C.F.R. 245.2(a).  Thus
the director of USCIS is authorized to adjudicate adjustment of status applications.  6 U.S.C. §
271(b); 8 C.F.R. § 245.2(a).

States, the applicant must have an approved immigrant visa petition, Form I-130.  Moreover, an approved I-130 filed by the spouse fulfills the requirement that a visa be "immediately available." *INS v. Miranda,* 459 U.S. 14, 15 (1982).  Unlike the determination whether a marriage is a sham, the determination of a petition for adjustment is discretionary and not subject to judicial review; furthermore the Immigration Judge ("IJ") has exclusive jurisdiction to decide the adjustment of status application.  Thereafter an appeal may be made to the BIA.  8 C.F.R. § 245(a)(1), while only the INS may adjudicate the underlying I-130 petition.  8 C.F.R. 204.1(e).

## Defendants' Motion to Dismiss (#16)

The Court summarizes the procedural history of this case, relying in part on relevant documentary evidence submitted by the parties and which is contested.

Plaintiff married fellow Nigerian Perpetual B. Offiong ("Perpetual") before Plaintiff arrived in the United States.  Exs. 4A, 9A, 9F.  On December 3, 1991 Plaintiff was admitted into the United States as a B-1 Visitor with permission to remain until December 30, 1991.  Exs. 4A, 9A.  On August 1, 1992 Plaintiff married United States citizen Terrilyn Emma Pierce ("Terrilyn").  On August 31, 1992 he divorced Perpetual.  Ex. 9E.  On September 8, 1992, Terrilyn filed a Form I-130 Visa Petition for Alien Relative on Plaintiff's behalf.  Ex. 9F.  At the same time Plaintiff filed

an application for permanent residence, with a copy of a Nigerian divorce certificate stating that he and Perpetual had divorced on November 18, 1991, i.e., before he married Terrilyn.  Exs. 9G and 9B.

On April 13, 1993, the INS began an overseas investigation. Ex. 9F.  On April 12, 1994, the investigation revealed that the divorce certificate submitted by Plaintiff had been altered and that he had divorced Perpetual on August 31, 1992 after he married Terrilyn, not on November 18, 1991.  At the bottom of the overseas investigation request was a handwritten note:  "Tilley, here is a Don Johnson case.  O/S shows that the date of divorce was altered. They married 8-1-92, Ben. did not divorce until 8-31-91. -Martha N."  (This is the document that Plaintiff now claims as newly found evidence.)  With a supporting sworn declaration from Martha V. Flores (Ex. 38), Defendants explain that the author of the note, Martha Flores, previously known as Martha Nguyen ("Martha N" in the note), interviewed Plaintiff in regard to his application to adjust his status to that of a lawful permanent resident.  Ex. 38.  After the interview she asked for an overseas investigation because the case involved Don Johnson, a minister/priest in the Los Angeles area who was under investigation for conducting numerous sham marriages used to obtain immigration benefits.  Ex. 38.  She sent the letter to Peter Tilley ("Tilley"), who worked in the marriage fraud unit, and requested an Overseas Investigation ("O/S").

-16-

Because Plaintiff was the beneficiary of the Form I-130, in the note he was referred to by the abbreviation "Ben."

On August 19, 1997, INS issued Plaintiff a NOID regarding Terrilyn's visa petition on the ground that the divorce certificate Plaintiff had submitted was altered and that he was not legally free to marry Terrilyn because he was still married to Perpetual at the time.  Ex. 9H.  On October 14, 1997, the visa petition was denied pursuant to 8 U.S.C. § 1154(c)[7] because Plaintiff had attempted to obtain permanent residency by fraud and had entered into a marriage to obtain immigration benefits.  Ex. 9H.  That decision became final on October 14, 1997.  Ex. 9I.  On December 17, 1997 Plaintiff was informed that his application for permanent residence had been denied and that he had to depart from the United States voluntarily or proceedings would be initiated to enforce his departure.  Ex. 9J.

On August 20, 1998, Plaintiff and Terrilyn divorced.  Ex. 9L.

On August 30, 1998 Plaintiff married Linda Jackson ("Linda"), also a United States citizen, his third marriage.  Ex. 9D.  On

---

[7] As noted, section 1154(c) provides,

Notwithstanding the provisions of subsection (b) of this section no petition shall be approved if (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.

-17-

September 15, 1998 Linda filed a Form I-130 Visa Petition for Alien Relative on behalf of Plaintiff, and at the same time he filed an application for permanent residence. Exs. 9Q and 9R. At that time Plaintiff claimed that INS had lost his previous application. Ex. 9R. When the government issued a NOID to deny the petition because Plaintiff had been found to have engaged in immigration fraud, Linda submitted the same divorce decree that Plaintiff had submitted in support of Terrilyn's petition.[8]

Defendants maintain that in error on July 23, 1999 INS sent Plaintiff a letter stating that it had granted his application for permanent status. Ex. 9S. That letter was in error because Plaintiff was required by law to have an approved visa petition in order to have his application for permanent residence granted, but due to the prior finding of marriage fraud, he was barred by 8 U.S.C. § 1154(c) from ever being able to have a visa petition granted based on a marriage to a United States citizen. Moreover, the letter stated on its face that it should not be regarded as proof of that status. Ex. 9S. On June 14, 2000, INS sent Plaintiff another erroneous letter stating that it had granted him conditional permanent resident status based on his marriage to a United States citizen. 8 U.S.C. § 1186a(a)(1), g(1); Ex. 9V. Furthermore on June 15, 2000 the INS placed a stamp on Plaintiff's

---

[8] The INS later characterized that act as "submission of false documentation on two separate occasions" and questioned plaintiff's credibility. Ex. 30, Decision of the Immigration Judge at 6, May 23, 2005.

passport, "processes I-551, temporary evidence of lawful admission for permanent residence." *Id.*

Defendants represent that on October 19, 2000 INS uncovered Plaintiff's prior marriage fraud, his submission of the fraudulent divorce certificate, and the resulting denial of Terrilyn's petition and Plaintiff's application to adjust status. Ex. 9U. The INS concluded that pursuant to 8 U.S.C. § 1154(c), Plaintiff was not eligible for the more recent visa petition that was filed by Linda and erroneously approved in a letter, and it accordingly sent Plaintiff a NOID. Ex. 9U. On October 26, 2000, Plaintiff, through Linda, challenged the NOID on the grounds again that he had divorced Perpetual before he married Terrilyn. Ex. 4F. On May 11, 2001, when Plaintiff and Linda visited the INS office in San Francisco, an INS officer told him that his status as a lawful permanent resident had been cancelled and the officer stamped "cancelled" over the previously issued stamp on his passport. Ex. 2 at 5 and Ex. D. On May 25, 2001 INS officially denied Linda's visa petition, while explaining that the permanent resident stamp placed on Plaintiff's passport was in error because Plaintiff had not yet been granted permanent resident status nor had his visa petition been adjudicated. Ex. 9W. On September 7, 2001 Petitioner's application to adjust his status to that of a lawful permanent resident was also denied because the visa petition on which it was based had been denied on May 25, 2001. Ex. 9X.

Plaintiff was ordered to depart the country immediately or be placed in removal proceedings.  Ex. 30, attachment.[9]

On October 26, 2001 Plaintiff filed a Complaint for Declaratory and Injunctive Relief in the United States District Court for the Northern District of California, *Bassey v. INS*, No. 3:01-cv-04035 (N.D. Cal.).  Exs. 1 and 2.  The complaint charged that INS's revocation of his lawful permanent status was unlawful because INS had failed to follow the rescission procedures established in 8 U.S.C. § 1256.  Ex. 2.  INS filed a motion to dismiss (Ex. 5) in that action on July 5, 2002 and argued that the court had no subject matter jurisdiction because there was no final agency decision.  *Id.*  Any final adverse decision by the agency would then be reviewed by the BIA and possibly the Ninth Circuit Court of Appeals if he filed a Petition for Review.  *Id.*  In a subsequent brief, moreover, INS explained that it was not trying to "rescind" Plaintiff's lawful permanent resident status because Plaintiff had in actuality never been granted that status.  Exs. 8, 10.  It also pointed out that the two issues, i.e., whether Plaintiff was a lawful permanent resident and whether the erroneous documents that had been sent to him gave him that status, would be decided in his ongoing removal proceeding.  *Id.*

On October 10, 2002 the California federal district court granted summary judgment in favor of INS.  Ex. 12 (*Bassey v. INS*,

---

[9] Subsequently on April 30, 2004, Plaintiff and Linda divorced.  Ex. 30.

No. C 01-4035 SI, 2002 WL 31298854 (N.D. Cal. Oct. 10, 2002).  That

court concluded that it had jurisdiction to review the September 7,

2001 decision by INS to deny Plaintiff's application for permanent

residence.  *Id.* at *4, *citing Chan v. Reno*, 113 F.3d 1068, 1071 (9th

Cir. 1996), and *Tang v. Reno*, 77 F.3d 1194, 1196 (9th Cir. 1996).[10]

It also ruled that the passport stamp did not constitute actual

_____

[10] In their exercise of jurisdiction over denials of status adjustment, *Chan* and *Tang* were subsequently distinguished by the Ninth Circuit as cases that did not involve removal proceedings pending during the federal judicial review.  *Cabaccang v. USCIS*, 627 F.3d 1313, 1317 (9th Cir. 2010)(holding "that district courts lack jurisdiction to review denials of status adjustment if removal proceedings are simultaneously pending").  Thus because Plaintiff's removal proceedings began on April 10, 2001, while his complaint was pending in the District Court for the Northern District of California, the *Bussey* district court erroneously relied upon them.  Ex. 30, Bates 000418 n.6, and 000421-000422.  As the Ninth Circuit explained in *Cabaccang*, under the Administrative Procedure Act ("APA") an "agency action is subject to judicial review only when it is either:  (1) made reviewable by statute; or (2) a 'final' action 'for which there is no other adequate remedy."  *Cabaccang*, 627 F.3d at 1315.  Neither applied to Offiiong at the time of the California decision as there was, and is, no relevant statute authorizing judicial review of the denial of an adjustment of status and no final agency decision.  Once a petitioner is denied an adjustment of status, he has the right to renew his application to adjust status during his removal proceedings before an immigration judge ("IJ").  *Id.* at 1315-16, citing 8 C.F.R. §§ 245.2(a)(5)(ii), -(c), and 1245.2(a).  The IJ "has unfettered authority to modify or reverse USCIS's denial of [his] application[]."  *Id.* at 1316, citing 8 C.F.R. §§ 1240.1(a)(1)(ii), 1245(a)(1)(i).  "The pendency of removal proceedings means [the applicant has] not exhausted [his] administrative remedies.  *Id.* at 1316.  Where there is no pending removal proceeding, the denial of status adjustment is final because there is no appeal to a higher administrative authority. . . . On the other hand, when removal proceedings are pending, further administrative relief is available.  Accordingly, we join our sister circuits in holding that district courts lack jurisdiction to review denials of status adjustment if removal proceedings are simultaneously pending."  *Id.* at 1317, *citing inter alia Pinho v. Gonzales*, 432 F.3d 193, 201-01 (3d Cir. 2005).  *In accord*, *Maringo v. Mukasey*, 281 Fed. Appx. 365, 367-68 (5th Cir. June 11, 2008), *citing Cardoso v. Reno*, 216 F.3d 512 (5th Cir. 2000)(holding that the alien did not exhaust her administrative remedies regarding her denial of adjustment of status because she could renew her request in removal proceedings).  If the IJ denies the adjustment of status and orders deportation under 8 U.S.C. 1255a, judicial review is available in the relevant Circuit Court of Appeals under 8 U.S.C. § 1255a(f)(4)(A).  *Judhani*, 2011 WL 1252661 at *6, *citing Reno v. Catholic Social Servs., Inc.*, 509 U.S. 43, 54 (1993).

approval of Plaintiff's application for permanent residence. *Id.* Furthermore the court found that while the June 14, 2000 letter stated that Plaintiff had met all requirements for permanent residence, it had no legal effect on his immigration status because his I-130 Visa Petition for Alien Relative had been denied; without its approval, INS had no authority to grant Plaintiff permanent resident status. *Id.* Thus the September 7, 2001 notice was a denial of Plaintiff's permanent resident status application, not a "rescission" of that status, and it was correct under 8 U.S.C. § 1154(c) because of the earlier finding of marriage fraud. *Id.* That finding had not yet been disputed in the District Court case, and it barred granting Plaintiff permanent resident status through a visa petition filed on his behalf by a United States citizen spouse. *Id.* Because the INS's denial was legally proper, the district court granted summary judgment in favor of INS. *Id.* Although Plaintiff appealed the decision to the Ninth Circuit on January 6, 2003, the appeal was dismissed for lack of jurisdiction because it was filed untimely. Ex. 13.

On April 8, 2003 Plaintiff filed a motion to vacate the summary judgment granted by the district court on the grounds of new evidence, i.e., affidavits claiming that Plaintiff had divorced Perpetual on November 18, 1991. Ex. 14. On August 1, 2003 INS filed its opposition (Ex. 21) to the motion, arguing that the evidence was not newly discovered:

The INS submitted evidence in support of its opposition
to plaintiff's motion for summary judgment and
defendant's cross-motion for summary judgment which
established that Bassey had submitted an altered divorce
decree to the INS in support of his claim that he had
divorced his Nigerian wife on November 18, 1991. . . .
The Nigerian court records reflected that the divorce
occurred on August 31, 1992, after Bassey had already
married his second wife. . . . . Bassey has now obtained
a new divorce decree from the Nigerian court dated
January 13, 2003, which purports to resurrect the
fraudulent November 18, 1991 date. . . . . Curiously,
this order states that the prior order of November 18,
1991 could not be found. . . . This is because there was
no order issued on that date. . . . . The Nigerian court
appears to have simply accepted Bassey's self-serving
testimony that the Nigerian court entered a divorce
decree on November 18, 1991, despite the absence of any
evidence of this order's existence. Additionally, Bassey
has submitted the declaration of his mother, who attests
that she was present in the Nigerian court on November
18, 1991. . . . None of this is new evidence. Bassey has
simply tried to go back in time and validate a divorce
date which was fabricated.

During a hearing on September 26, 2003, the District Court orally

denied the motion to vacate, ruling,

I find under 60(b)(2), this is not newly-discovered
evidence.  The plaintiff certainly had all of this
information right along, and you can't say he didn't know
when this divorce happened, so that it's not newly
discovered within the ambit of 60(b)(2).
   As to 60(b)(1), looking at the *Bateman* factors, I
find that they are not met here.  There is an inadequate
explanation for the delay.  There's substantial prejudice
to the other party by bringing in these affidavits at the
last minute.  And I really have a question as to the good
faith of the methodology by which this is raised six
months after the summary judgment was entered.

Ex. 23 (transcript) at p.5, l. 18-p. 6, l4; district court's

written order denying motion, Ex. 24.  Plaintiff filed an appeal on

October 17, 2003, but it was dismissed on April 6, 2004 for failure

to prosecute.  Exs. 25-27.

On April 10, 2002, a Notice to Appear was filed against Plaintiff charging him with being removable from the United States under 8 U.S.C. § 1227(a)(1)(B) because he was an immigrant who had remained beyond the time permitted to him.  Ex. 29.  On May 23, 2005 the immigration judge ordered Plaintiff removed and denied his application for cancellation of removal and rejected his argument that he was entitled to lawful permanent resident status or conditional permanent resident status or that he could adjust his status to that of lawful permanent resident status in removal proceedings.  Ex. 30, attachment.  The immigration judge noted that "there was an earlier finding of marriage fraud that had not been disputed by Plaintiff in that action and since it was not disputed, . . . the District Court concluded that the visa petition was properly denied and that by law [Plaintiff] could not be granted any status. . . . That was the law of the case, and this Court cannot go behind that finding, i.e., [Plaintiff] has never been admitted lawfully to either conditional status much less permanent resident status."  *Id.*  The IJ further held that since Plaintiff's marriage to Linda had ended in divorce in 2004, "there is no way that [Plaintiff] can become either a conditional permanent resident or a lawful permanent resident because the two principal marriages have both ended in divorce."  *Id.*  The BIA affirmed the IJ's decision on May 18, 2006.  Plaintiff never filed a Petition for

Review with the Ninth Circuit.

On June 19, 2006 Plaintiff filed a motion to reconsider with the BIA, contending that the IJ had erred because he "felt compelled by the law of the case doctrine to find marriage fraud when, at most, there was arguably document fraud." *Id.*  In its opposition, DHS pointed out that the IJ provided Plaintiff with an opportunity to argue his claim that the rescission of his conditional permanent residential status was improper. *Id.*  On September 19, 2006, the BIA denied the motion to reconsider and held that the IJ "properly found that [Plaintiff] had never been granted lawful permanent resident status or conditional permanent resident status." *Id.*

Plaintiff then filed a Petition for Review of the IJ's denial of his motion to reconsider by the Ninth Circuit Court of Appeals on October 17, 2006.  Ex. 28.   The Record of Appeal, containing all of documents attached as exhibits to the instant complaint, was filed on December 6, 2006.  Ex. 28-29.  On March 20, 2007 the Ninth Circuit dismissed Plaintiff's challenge on the grounds that the denial of his application for cancellation of removal was a discretionary determination, not subject to judicial review.  Ex. 28.  On December 9, 2010 the Ninth Circuit Court of Appeals denied Plaintiff's Petition for Review, ruling that Offiiong had never been granted lawful permanent-resident status or conditional-permanent-resident status and that the BIA did not abuse its

discretion in denying his motion to reconsider.  Ex. #1.  *See Offiiong v. Holder*, 406 Fed. Appx. 112 (9th Cir. Dec. 9, 2010).

On April 25, 2007 Plaintiff filed a habeas corpus petition in this Court in which he challenged his detention and his order of removal.  Ex. 32.  On February 7, 2008 this Court dismissed the portion of Plaintiff's habeas petition that related to his order of removal, but did not dismiss the challenges to his detention, which were separate from his removal proceeding at that time.  Ex. 33.  Plaintiff was subsequently released from DHS custody, and on April 8, 2009, the remainder of his petition challenging his detention was dismissed as moot.  Exs. 34-35.  On May 2, 2011 Plaintiff was removed to Nigeria pursuant to his final order of removal.  Exs. 36-37.

## Court's Decision

### Jurisdiction

Plaintiff asserts that this Court has jurisdiction to decide whether, based on newly discovered evidence, the denial of his Form I-130 VISA Petitions for Alien Relative and the determination with regard to his allegedly approved Form I-485 for permanent resident status that he never had lawful permanent residence due to marriage fraud were improper pursuant to 8 U.S.C. §§ 1151(b)(2)(A)(i) and 1255, federal question jurisdiction under 8 U.S.C. § 1331 (federal question), Administrative Procedure Act ("APA"), the Declaratory Judgment Act, and the Mandamus Act.

The federal question statute generally provides federal courts with jurisdiction for actions arising under the Constitution, laws, or treaties of the Untied States.   28 U.S.C. § 1331; *Judhani v. Holder*, No. 3:10-CV-1256-B, 2011 WL 1252661, *4 (N.D. Tex. Mar. 9, 2011), *adopted*, 2011 WL 1252605 (N.D. Tex. Mar. 31, 2011).   This action arises under the INA, but because Plaintiff has sued Defendants in their official capacities as government employees, the suit is treated as a suit against the United States.   *Judhani*, 2011 WL 1252661, at *4, *citing inter alia Hafer v. Melo*, 502 U.S. 21, 25 (1991), and *Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985). Because the United States may not be sued except to the degree it has consented to suit by a statute that unequivocally and expressly states that government waives its sovereign immunity, to secure relief against it under § 1331 the suit must be tied to such an additional authority.   *Judhani*, 2011 WL 1252661, at *4, *citing United States v. Testan*, 424 U.S. 392, 399 (1976).

The APA also does not provide an independent basis for subject matter jurisdiction on federal courts.   *Califano v. Sanders*, 430 U.S. 99, 107 (1977).   The APA states that "[a] person suffering legal wrong because of agency action . . . is entitled to judicial review thereof," but only of "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court."   *Id.* at *5, *citing* 5 U.S.C. §§ 702 and 704.   The APA is not applicable "to the extent that 'statutes

preclude judicial review' or that 'agency action is committed to agency discretion by law.'" *Abanov v. Gonzales*, No. Civ. A. H-06-3725, 2007 WL 2872765, *2 (S.D. Tex. Sept. 28, 2007), *citing* 5 U.S.C. § 701(a)(1)-(2).

The Fifth Circuit has concluded that adjudication of an I-130 petition is not discretionary within the meaning of 8 U.S.C. 1252(a)(2) and thus are subject to review by the courts. *Ayanbadejo v. Chertoff*, 517 F.3d 273, 278 (5th Cir. 2008); *Omoruyi v. Chertoff*, Civ. A. No. H-08-0106, 2008 WL 1812887, *3 (S.D. Tex. Apr. 28, 2008). *See also Glinters v. Frazier*, 614 F.3d 822 (8th Cir. 2010); *Ruiz v. Mukasey*, 552 F.3d 269, 274-76 (2d Cir. 2009); *Ogbolumani v. Napolitano*, 557 F.3d 729, 733 (7th Cir. 2009). An agency action is "final" under the APA when (1) it represents the "'consummation of the agency's decision making process,' meaning that 'it must not be of a merely tentative or interlocutory nature'; and (2) 'the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 178 (1997).[11] This finality requirement permits an agency to apply its expertise and correct its errors, and it precludes courts from

---

[11] One exception is that federal courts lack the authority to require plaintiffs to exhaust administrative remedies before seeking judicial review if the relevant statute or regulation does not require exhaustion, but makes it discretionary, e.g., the National Housing Act of 1934, 12 U.S.C. § 1708, 24 C.F.R. § 25.8.. *Darby v. Cisneros*, 509 U.S. 137, 154 (1993); *United States v. Menendez*, 48 F.3d 1401, 1411 (5th Cir. 1995).

engaging in piecemeal review. *FTC v. Standard Oil Co.*, 448 U.S. 322 (1980). In reviewing the agency's final decision, the court may set aside the ruling only if it is "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A); *Sun Towers, Inc. v. Schweiker*, 694 F. 2d 1036, 1038 (5th Cir. 1983), cited for that proposition in *AAA Bonding Agency, Inc. v. U.S. Dept. of Homeland Sec.*, 2011 WL 5138639, *2 (5th Cir. Oct. 31, 2011). An agency's actions are arbitrary and capricious "if the agency relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Texas Oil and Gas Ass'n v. U.S. E.P.A.*, 161 F.3d 923, 933 (5th Cir. 1998), *quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983). An agency's action, findings of fact and conclusions should also be set aside if they are unsupported by substantial evidence. 5 U.S.C. § 706(2)(E). "Substantial evidence is more than a scintilla, less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). The "standard of review is a narrow one," highly deferential to the administrative agency, and the court is not to

substitute its judgment for that of the agency. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983); *Texas Clinical Labs., Inc. v. Sebelius*, 612 F.3d 771, 775 (5th Cir. 2010). The court must "'limit [its] review to whether the agency 'articulated a rational connection between the facts found and the decision made,' and 'it is well-settled that an agency's action must be upheld, if at all, on the basis articulated by the agency itself.''" *Gouger v. U.S. Army Corps of Engineers*, 779 F. Supp. 2d 588, 602 (S.D. Tex. 2011), *quoting Hayward v. U.S. Dep't of Labor*, 536 F.3d 376, 380 (5th Cir. 2008)(citations omitted).

The Declaratory Judgment Act, 28 U.S.C. § 2201, provides,

> In a case of actual controversy within its jurisdiction, except with respect to Federal taxes, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of an interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

The Act is a procedural statute, not a jurisdictional statute, and it does not waive sovereign immunity nor provide an independent basis for federal court review. *Id., citing inter alia Bauhaus USA, Inc. v. Copeland*, 292 F.3d 439, 447 & n.11 (5th Cir. 2002).

The Mandamus Act, 28 U.S.C. § 1361, states, "The district courts shall have any action in the nature of a mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." *Id.* at *5. Nevertheless

-30-

mandamus relief is generally considered "a drastic one, to be invoked only in extraordinary situations" where government officials have clearly failed to perform nondiscretionary duties. *Kerr v. U.S. District Court*, 426 U.S. 394, 402 (1976); *Pittston Coal Group v. Sebben*, 488 U.S. 105, 121 (1988). A "writ of mandamus has traditionally been used in the federal courts only to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise authority when it is its duty to do so." *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 23, 34 (1980). Mandamus relief is only proper where the plaintiff demonstrates "(1) a clear right to the relief, (2) a clear duty by the respondent to do the act requested, and (3) the lack of any other adequate remedy." *Id., citing Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980), and *In re Stone*, 118 F.3d 1032, 1034 (5th Cir. 1997). The duty owed must set out in the Constitution or by statute, must be specific, free from doubt, ministerial, and devoid of the exercise of judgment or discretion. *Dunn-McCambell Royalty Interest. Inc. v. National Park Serv.*, 112 F.3d 1283, 1288 (5th Cir. 1997). Plaintiff has not shown and cannot show that he had a "clear and indisputable right" to a visa and to an adjustment of status. Thus the Mandamus Act does not provide jurisdiction here.

Defendants urge that the doctrines of res judicata and collateral estoppel preclude relitigation of two issues previously

decided by the district court for the Northern District of California and the Ninth Court of Appeals:  that his permanent resident status was not improperly "rescinded" because it was never obtained and that he was never eligible for that status or an approved visa petition because of the finding of marriage fraud by the INS.

Even though Defendants contend that ruling of the district court in the Northern District of California is *res judicata*, this Court disagrees because it was not a court of competent jurisdiction.  In that court Plaintiff asserted three causes of action:  (1) the INS failed to provide Plaintiff with proof of his alleged permanent resident status as required by law; (2) the INS violated the APA by canceling his lawful resident status without a hearing , as required by 8 C.F.R. § 246; and (3) that failure to provide a hearing violated his right to due process under the Fifth Amendment.  *Bassey*, 2002 WL 31298854 at *2.  "Under the doctrine of exhaustion of administrative remedies, a party may not seek judicial review of an adverse administrative decision until the party first pursues all possible relief within the agency."  *Young ve. Reno*, 114 F.3d 879, 881 (9th Cir. 9th Cir. 1997).  Nevertheless, as noted in footnote 10 regarding the cases relied upon by the *Bassey* district court, in *Cabaccang v. USCIS*, 627 F.3d 1313, 1317 (9th Cir. 2010), the Ninth Circuit ruled "that district courts lack jurisdiction to review denials of status adjustment if removal

proceedings are simultaneously pending."  In a *de novo* review of the agency's denial of their application, the IJ has the authority to "completely wipe away the USCIS's prior decision." *Id.*, citing § 1245.2(a)(1)(i)("In the case of any alien who has been placed in deportation proceedings or in removal proceedings (other than as an arriving alien), the immigration judge hearing the proceeding as exclusive jurisdiction to adjudicate any application for adjustment of status the alien may file.").  Thus the agency's denial of Plaintiff's application is not final and the district court lacked jurisdiction under the APA, 5 U.S.C. § 704.  Plaintiff's removal proceedings began on April 10, 2001, while his complaint was pending in the District Court for the Northern District of California.  Ex. 30, Bates 000418 n.6, and 000421-000422.  Under the APA an "agency action is subject to judicial review only when it is either (1) made reviewable by statute; or (2) a 'final' action 'for which there is no other adequate remedy." *Cabaccang*, 627 F.3d at 1315.  Neither applied to Offiong at the time of the district court's decision as there was, and is, no relevant statute authorizing judicial review of the denial of an adjustment of status and no final agency decision.[12]  Once a petitioner is denied

_____

[12] The California district court opined that "where an administrative appeal is available, a party need not pursue that appeal prior to seeking judicial review." *Bassey*, 2002 WL 31298854, at *4, *citing Darby v. Cisneros*, 509 U.S. 137, 154 (1993)("an appeal to 'superior agency authority' is a prerequisite to judicial review only when expressly required by statute").

In *Cabaccang*, 627 F.3d at 1316, the Ninth Circuit quoted *Reiter v. Cooper*, 507 U.S. 258, 269 (1993), citing the APA, 5 U.S.C. § 704, "'Where relief is available from an

an adjustment of status, he has the right to renew his application to adjust status during his removal proceedings before an IJ.  *Id.* at 1315-16, citing 8 C.F.R. §§ 245.2(a)(5)(ii), -(c), and 1245.2(a).  The IJ "has unfettered authority to modify or reverse USCIS's denial of [his] application[]."  *Id.* at 1316, citing 8 C.F.R. §§ 1240.1(a)(1)(ii), 1245(a)(1)(i).  When removal proceedings are pending, further administrative relief is available and there is no final agency decision for judicial review.  This Court notes that the INS even raised the issue of the California district court's subject matter jurisdiction in the proceeding before the district court on the grounds that Plaintiff had not exhausted his administrative remedies, but that district court erroneously concluded that it had such jurisdiction.  *Bassey*, 2002 WL 31298854, at *4.

These issues, *inter alia*, were raised again in the removal proceeding.  Plaintiff sought adjustment of status or conditional permanent resident status or recognition that he at least at one time was granted conditional resident status."  Ex. 30 at 2-3, Bates Nos. 000450-51).  Nevertheless, for purposes of *res judicata*

---

administrative agency, the plaintiff is ordinarily required to pursue that avenue of redress before proceeding to the courts; and until that recourse is exhausted, suit is premature and must be dismissed.' . . . Only in 'exceptional circumstances' is administrative exhaustion not required." Because the Cabaccangs had the ability to reopen their applications to adjust status during removal proceedings, the Ninth Circuit concluded there were not exceptional circumstances and "[u]ntil they have exhausted this available administrative remedy, the district court cannot hear their claim." *Id.* at 1317.

the problem with the IJ's decision is that the IJ felt bound by the district court's decision as "the law of the case, and this Court cannot go behind that finding," i.e., that he has never been admitted lawfully to either conditional status much less lawful permanent resident status." *Id.* at 8 (Bates No. 000456). *See also id.* at 9 (Bates No. 000457)("Even if the Court were to conclude he was a conditional resident, he could not now obtain permanent resident status because the marriage is finished, but the Court does not conclude that.  Rather, the Court is bound by the decision in the United States District Court for the northern district that there was never any grant of permanent resident status, conditional or otherwise.").   Thus while under the law the original denial of Terrilyn's Visa Petition for marriage fraud denied Plaintiff any future right to a conditional or permanent resident status in the United States and thus the district court's determination was correct, and even though the IJ's decision, once affirmed *per curiam* by the BIA (#30 at Bates Nos. 000470 and 000471) and after the Ninth Circuit's denial of Plaintiff's motion to reconsideration on a Petition for Review (Ex. 31), it was a final decision that was not arbitrary or capricious, nevertheless, the Court concludes that it is defective as far as a preclusive effect for *res judicata* because the district court lacked subject matter jurisdiction.

The Court does, however, conclude that Defendants' other grounds for dismissal for lack of subject matter jurisdiction are

sustained.  As demonstrated, the April 13, 1993 letter is not "new evidence," but was made available to Plaintiff years ago and therefore cannot justify this action.  Plaintiff's claims are also time-barred by the six-year statute of limitations imposed by 28 U.S.C. § 2401(a) because his causes of action accrued in 1997 when Terrilyn's Form I-130 Visa Petition for Alien Relative and his application for permanent residence were denied on the grounds of a sham marriage.  Plaintiff's current challenges to his adjustment-of-status and removal are not subject to judicial review by this Court under 8 U.S.C. § 1252, as amended by the REAL ID Act of 2005. *See, e.g., Sillah v. Lara*, 275 Fed. Appx. 822, *1 (11th Cir. Apr. 24, 2008) (district court lacks jurisdiction to review mandamus petition regarding denial of application for adjustment of status).

Accordingly, the Court

ORDERS that Defendants' motion for dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1) is GRANTED.

**SIGNED** at Houston, Texas, this  27th  day of  March , 2012.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE